**SIGNED.**

**Dated: June 25, 2007**



_____
**JAMES M. MARLAR**
**U.S. Bankruptcy Judge**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 13 |
| JULIO C. MONTANO and MARIA G. VEGA-MONTANO, | No. 4:04-bk-02177-JMM |
| | **MEMORANDUM DECISION RE:** |
| Debtors. | **SECURED CREDITOR'S ATTORNEYS' FEES** |

A motion to determine the reasonableness of secured creditor Colleen Goltz' attorneys' fees and costs came on for hearing on March 12, 2007. The Debtors were represented by Wayne Mortensen; Colleen Goltz was represented by Nancy J. March; the chapter 13 Trustee, Dianne C. Kerns, was represented by Craig Morris. After hearing arguments, the court took the matter under advisement. Now, after consideration of the parties' legal positions, the documentary evidence presented, the entire chapter 13 administrative file, and the law, the court now renders its decision. A separate order will be entered pursuant to FED. R. BANKR. P. 9021.

## **FACTS**

### 1. **Background and the Chapter 13 Case**

The facts of this case are neither complex nor novel. The Debtors were in financial difficulty, and had fallen behind in the house payments due to lienholders on such residential property. In order to

salvage the equity in their realty, and to work through their other debt, they filed for chapter 13 relief on May 4, 2004.

In summary, the Debtors listed secured debt against their home as:

    1st Mortgage (Deed of Trust) to EMC Mortgage Corp.    $59,513

    2nd Mortgage (Deed of Trust) to Colleen Goltz    24,952

The Debtors listed the home's value as $92,000. Each of these creditors was oversecured. In addition to these secured claims,[1] the Debtors listed unsecured debt of $13,553, which they proposed to pay approximately 34% over the plan's duration ($4,656.57).

The plan was designed as a 55-month plan. Under the plan's terms, the Debtors agreed to pay to the chapter 13 Trustee $1,150 each month, which the Trustee would then distribute to creditors.

The pre-petition arrearage to EMC (first mortgage) was $1,2000, and was to be paid out under the plan. No arrearage was noted for the Goltz debt (second mortgage). The Debtors then proposed to pay EMC directly, on an ongoing basis of $604 per month. Ms. Goltz' treatment was (apparently) simply to continue to receive her regular payments under the plan. This was somewhat odd as her note had "ballooned" over a year earlier. The plan was vague and/or silent as to her treatment, but the lack of significant legal action, in the chapter 13 case, leads the court to the conclusion that some compromise had been reached.

### 2. The Goltz Claim

Ms. Goltz filed a claim on October 4, 2004. It reflected that the debt was calculated to be $26,414.41 on the date of filing. This figure was broken down as follows:

    Principal    $24,952.70

    Trustee's Fees    1,377.35

    Interest to Filing Date    84.36

---

[1] The Debtors also listed a secured lien on a car which they proposed to pay as a secured claim for $11,000 at a 10% interest rate, and treat $8,282 as an unsecured claim.

2

Case 4:04-bk-02177-JMM   Doc 69   Filed 06/25/07   Entered 06/26/07 09:43:35   Desc
Main Document    Page 2 of 13

Ms. Goltz had caused a trustee's sale to be commenced on or about August 8, 2004. Ms. Goltz' instructions to First American Title Company were to credit bid the property at $40,234.11, which included large late fees of $13,385, as well as default interest of $274.48.

Apparently, in filing her claim against the estate, Ms. Goltz elected to waive the default and late fees, and thus intended to claim only for her principal and interest in the bankruptcy case.

The original promissory note between the Debtors and Ms. Goltz was dated May 20, 1998, and was for $26,200. It called for payments of $210.81 per month from July 1, 1998, for a period of five years, ending with a balloon payment due on June 1, 2003. Thus, although the debt had become due over a year earlier, it is not explained anywhere in this case why Ms. Goltz had not started her trustee's sale for 14 months. The court assumes, once more, that the parties had reached some sort of interim compromise.

### 3. Goltz Engagement and the Notice of Appearance

On July 22, 2004, two and one-half months after the case was filed, Ms. Goltz engaged an attorney to represent her interests. Counsel immediately drafted and filed a notice of appearance in the case, and charged Ms. Goltz 0.4 hours and $51.50 for that service.

### 4. Goltz Proof of Claim

Counsel's records reveal that counsel began compiling the information necessary to file the proof of claim, which occurred on October 4, 2004. For the claim process, investigation, and client communication, counsel's time slips reveal that paralegals and attorneys spent 7.6 hours, and charged $577.50 to the client for this service.

### 5. The Progress of the Debtors' Plan

A year passed before Ms. Goltz took any further action in court. During that time, between October, 2004, and October, 2005, the case appears to have progressed smoothly and routinely. The

Debtors were able to confirm their plan on February 15, 2005. As noted, the plan was not clear as to Ms. Goltz' treatment, but it must have involved some sort of interim payments.

However, by mid-October, 2005, the Debtors had fallen behind in their plan payments, with the last Trustee payment occurring in around June, 2005, prompting Ms. Goltz to file, on October 17, 2005, a motion to dismiss. Her grounds were well-taken, alleging a material default under the plan.

During the course of that year, various telephone conferences or other inquiries concerning the status of the case, made by secured creditor's counsel or paralegals between December 7, 2004, and September 21, 2005, totaled 3.3 hours, for which the client was billed $582.

### 6. Goltz' Motion to Dismiss

On October 17, 2005, Ms. Goltz made the strategic decision to move to dismiss the entire chapter 13 case, for lack of plan payments. For this effort, secured creditor's counsel's office spent 2.1 hours and charged the client $336. The motion was not lengthy, but contained enough relevant facts and appropriate legal citations to properly frame the issue.

Just dealing, however, with the standard notice of the dismissal pleading took another 1.1 hours, at a cost of $102.

Then the attorney's file reflects that, on the date of the hearing, creditor's counsel spent 1.1 hours, at a cost of $268, talking to Debtors' counsel and attending the hearing on the motion to dismiss.

At the hearing, Debtors' counsel indicated that he felt that other options might present themselves and the matter was continued to January 9, 2006.

### 7. The Debtors' Case Begins to Unravel as Creditors Request Stay Relief

The day after Ms. Goltz filed the motion to dismiss, the secured creditor holding the first lien on the property (successor to EMC) filed a motion for stay relief, seeking leave to foreclose. Ms. Goltz filed

1 a protective response thereto, setting forth the reasonable request that if stay relief were granted, that the court should do the same for her. For this phase of the case, Ms. Goltz' attorneys billed 1.4 hours, at a cost of $216.

Confronted with the Goltz motion to dismiss, and the stay relief matter, the Debtors began to seek other creative ways to cure their defaults, and thereby save the property

The Debtors then asked for court approval to refinance the residence, which the court approved on January 11, 2006. Two days earlier, apparently satisfied that the Debtors were making progress, Ms. Goltz' counsel announced that the matters relating to her dismissal request had been resolved.

## 8. The Motion to Sell

However, the Debtors must have been unsuccessful in finding feasible refinancing monies, and five months later, on June 7, 2006, they sought permission to sell their property in order to pay off the secured lienholders. That request was granted on July 17, 2006. The order, however, was not entered until three months later, on October 24, 2006.

The only pleading filed by Ms. Goltz, between October 27, 2005 and June 29, 2006 (eight months) was a brief "conditional" objection to sale, noting that, as an oversecured creditor (which was not contested), she was entitled to be paid in full (which was also not in dispute).

Between December 5, 2005, and July 17, 2006 (7 1/2 months), Ms. Goltz' attorneys and staff incurred 11.9 hours of work, totaling $2,470. Half of these hours (5.9) related to figuring out the payoff on the debt, while the other half was focused on various conferences concerning details of either the refinancing or sale.

Thereafter, at some point after October 24, 2006, the sale closed and this dispute over the secured creditor's attorneys' fees surfaced.

### 9. Post-Approval Activity and Closing

Between the court's in-court approval of the sale on July 17, 2006, another six months or so passed before the approved sale finally occurred.

Again, during this period, little if any legal work was accomplished as Ms. Goltz' attorneys worked on nothing more, it would appear from the time slips, except attempting to derive the amount of the ever-elusive payoff. These efforts lasted six months and totaled 7.0 hours, for which the client was charged another $1,392.

### 10. Debtors' Complete Plan and Are Discharged; Attorneys' Fees Challenged

The sale effectively ended the chapter 13 case. The Debtors paid off their plan, and received their discharges on April 5, 2007. Ms. Goltz' counsel charged another $187.50 for "mop-up" work amounting to 0.9 hours. They then sought to be paid from the proceeds of the sale.

However, the Debtors challenged Ms. Goltz' claim for attorneys' fees of $7,278, as being unreasonable, arguing in part that the Debtors' counsel had only charged $2,706 for his work on the entire case.

The parties submitted the matter to this court on the record.

## LEGAL DISCUSSION

The Bankruptcy Code, 11 U.S.C. § 506(b), requires a court to consider, when measuring the amount of a secured claim, what is a reasonable attorneys' fee. The statute provides:

> Sec. 506. Determination of secured status.
>
> ***
>
> (b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

More than almost any other proceeding in bankruptcy, a decision on an attorneys' fee request rests within the sound discretion of the trial judge. Courts, in looking at the reasonableness of an attorneys' fee claim in a bankruptcy proceeding, have stated that it is "inherently unreasonable" to incur fees that are not cost-justified either by the economics of the situation or as necessary to preserve the particular party's interest in light of the legal issues involved. *See, e.g., In re Wonder Corporation of America,* 72 B.R. 580, 588 (Bankr. D. Conn. 1987); *In re Nicfur-Cruz Realty Corp.,* 50 B.R. 162, 169 (Bankr. S.D.N.Y. 1985).

In measuring reasonableness of fees, numerous judicial philosophies combine to assist a court. In addition to a judge's own experience, a court can draw upon the "lodestar" method (lawyer time multiplied by an hourly rate), application of the twelve *Johnson* factors,[2] and a host of other judicial comments upon the subject. *See, generally, In re Pettibone Corp.,* 74 B.R. 293 (Bankr. N.D. Ill. 1987).

A case, which is generally cited for setting forth "twelve rubics" for a trial court to consider, in its determination of what constitutes a reasonable fee, is *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974). Those twelve factors, however, are not "self-actuating: simply to articulate those twelve factors ... does not itself conjure up a reasonable dollar figure in the mind of the district judge." *In re Jensen-Farley Pictures, Inc.,* 47 B.R. 557 (Bankr. Utah 1985)(quoting from *In re Casco Bay Lines,* 25 B.R. at 754). As Judge Allen noted in *Jensen-Farley*:

> In general, the statutory factors under Section 330 and the Johnson factors consist of three components: (1) the quantity factor, comprised of documented time at customary billing rates; (2) the quality factor, comprised of the competency of the representation, taking into account the novelty and difficulty of the issues presented, the skill required, the time constraints, and the personal qualifications of the applicant; and (3) the result factor, comprised of the actual results achieved in the case.

*Id.* at 587.

In the case of *In re Casco Bay Lines, Inc.,* 25 B.R. 747 (Bankr. 1st Cir. 1982), the Bankruptcy Appellate Panel for the First Circuit stated that a court's initial approach, in determining a reasonable fee, is to multiply the number of hours reasonably expended on the case by a reasonable hourly rate. This is known as the "lodestar fee setting approach." However, as the *Casco Bay Lines* court stated, it is the quality of representation and the results that are most significant in determining the amount of the fee:

---

[2] *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir. 1974).

7
Case 4:04-bk-02177-JMM   Doc 69   Filed 06/25/07   Entered 06/26/07 09:43:35   Desc
Main Document    Page 7 of 13

> It is under the heading "quality of representation" that a bankruptcy court should particularly consider the results of the attorney's participation in the bankruptcy proceeding, and the benefit to the estate to see if circumstances warranted adjustment of the lodestar figure. Where an attorney's services have produced particularly exceptional benefits for the estates, an upward adjustment of the lodestar may be warranted to compensate for an hourly rate that turned out to be overly conservative. Similarly, if a high-priced attorney performs at a competent but undistinguished manner, a decrease in the hourly rate would be warranted.

*Id.* at 756.

The trial court has discretion in awarding what it considers to be a reasonable fee. A court's discretion "means a sound discretion ... exercised not arbitrarily or willfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result." *In re AWECO, Inc.,* 725 F.2d 293, 298 (5th Cir. 1984) (review of bankruptcy approval of a compromise application).

The First Circuit said in *Boston and Maine Corp. v. Moore,* 776 F.2d 2, 9 (1st Cir. 1985):

> To determine the number of hours "reasonably" spent, as well as in setting a "reasonable" hourly rate, a court must review the work to see whether "counsel substantially exceeded the bounds of reasonable effort," ... and should dis-allow hours that were "duplicative, unproductive, excessive, or otherwise unnecessary.

These general principles are applicable when a secured creditor seeks to charge its expenses against its debtor, and when it relies on its contract and § 506(b).

Here, Ms. Goltz, a fully-secured creditor in second lien position on the Debtors' principal residence, has claimed $7,278 for fees associated with the protection of her interest. The Debtors dispute these amounts. This being the case, the court must determine if the fees and costs are reasonable, in order to be allowed as part of the creditor's secured claim. 11 U.S.C. § 506(a).

In *In re Masnorth Corp.,* 36 B.R. 335, 339 (Bankr. N.D. Ga. 1984), the Court bluntly noted:

> While Midland [the secured creditor] is free to assert all bona fide claims before the Bankruptcy Court, Midland is not necessarily entitled to saddle the debtor with all the attorney's fees and expenses incurred so as to impede the debtor's ability to reorganize.

Ms. Goltz is a fully secured creditor whose delinquencies were cured and fully paid when the Debtors sold

the secured property. The sale provided ample funds for payment of the full amount of the debt, as well as the claimed attorneys' fees and costs, these being subject to the determination of this court as to their reasonableness.

## **AN ANALYTICAL LOOK AT THE ATTORNEYS' FEES**

Considerations of fairness, results obtained, difficulties encountered, novelty of issues presented, and time and experience of those involved must all be weighed.

Summarizing counsel's efforts for Ms. Goltz, the work product breaks down generally as:

| | **Services** | **Hours** | **Amount Sought** |
|---|---|---|---|
| 1 | Initial interview and filing notice of appearance | 0.4 | 51.50 |
| 2 | Preparation of proof of claim | 7.6 | 577.50 |
| 3 | Monitoring case progress through plan confirmation and beyond (October 2004 - October 2005) | 3.3 | 582.00 |
| 4 | Motion to dismiss: preparation of motion through hearing | 4.3 | 706.00 |
| 5 | Protecting Ms. Goltz from senior lienholder's § 362 motion | 1.4 | 216.00 |
| 6 | Calculations and conferences regarding note payoff amount and monitoring status of sale | 18.9 | 3,862.00 |
| 7 | Mop-up | 0.9 | 187.50 |
| | **TOTALS** | 36.8 | 6,182.50[3] |

The motion for fees, filed by Ms. Goltz, claimed 41.8 hours and $7,278. Ms. Goltz also seeks to be awarded certain costs:

Costs (out-of-pocket)   $   152.80

Trustee's fees               2,968.75

---

[3] As for the difference between this amount and the $7,278 claimed, the court simply proportionately allocated it to the "unreasonable" portions. This, then, did not adversely affect the conclusions made.

These will be discussed separately.

In reviewing counsel's fee request, the court concludes that much of the work for Ms. Goltz seeks to charge the Debtors for legal work that was excessive, unremarkable, or non-productive.

The claim itself was for an oversecured debt, and the amount due was just under $25,000. The fee now claimed increases that sum by almost 30%. This is excessive, especially when one considers that there was no time-consuming contested litigation in this matter.

The effort involved in a simple calculation of a payoff is unreasonably high. This should not have been a complex or time-consuming task, when one considers that the promissory note, attached to the proof of claim, gave the mathematical structure for this calculation. Thus, instead of the 18.9 hours claimed, the court will allow 2.0 hours for that task, which the court believes is generous. This includes monitoring the sale progress.

Similarly, the preparation of the proof of claim should not have taken over seven hours to prepare. The court will allow 1.5 hours for that routine task.

Finally, the decision and strategy related to filing a short motion to dismiss, based on undisputed plan payment defaults, should have consumed no more than 2.5 hours, through hearing.

All other claimed attorneys' fees items are reasonable.

## GENERAL COMMENTS, FINDINGS, AND CONCLUSIONS

On balance, and looking at the case in its overall proportion, the court finds and concludes that the total creditor's bill, sought to be charged to the Debtor, is unreasonably high. This is not to say that the work was not done, but it appears to be excessive for the work that actually had to be done, and the time it should have taken to do it.

In this case, the court finds that the issues were neither complex nor novel. Indeed, they were quite routine. The court cannot accept that such efforts - for a secured creditor's single-minded purpose of either getting payments, or monitoring a refinance or sale which provided for its payoff, would cost almost $7,278.00. Frankly, the issues and intensity of this case did not rise to such level. The creditor overworked the case beyond the boundaries of fairness.

The court appreciates the creditor's need for specialized bankruptcy assistance, and is sensitive to it. However, considering the entire record in this matter, the court is left with the clear impression that the time spent by the secured creditor's professionals was excessive. Translated into § 506 terms, then, the charges are not "reasonable." To the extent that a creditor wishes to expend such resources, that is a business decision which it is free to make. However, a creditor may not run the engine at full throttle and expect its borrower to pay the entire fuel bill. For these reasons, the total amount of the fee award to Ms. Goltz, is determined to be $2,081.81, which is made up of the following:[4]

|   | **Services** | **Hours** | **Amount Sought** |
|---|---|---|---|
| 1 | Initial interview and filing notice of appearance | 0.4 | 51.50 |
| 2 | Preparation of proof of claim | 1.5 | 261.16 |
| 3 | Monitoring case progress through plan confirmation and beyond (October 2004 - October 2005) | 3.3 | 582.16 |
| 4 | Motion to dismiss: preparation of motion through hearings | 2.5 | 435.27 |
| 5 | Protecting Ms. Goltz from senior lienholder's § 362 motion | 1.4 | 216.00 |
| 6 | Calculations and conferences regarding note payoff amount and monitoring status of sale | 2.0 | 348.22 |
| 7 | Mop-up | 0.9 | 187.50 |
|   | **TOTALS** | 12.0 | 2,081.81 |

Thus, for Ms. Goltz' attorneys' fees in this case, the court awards a reasonable fee of $2,081.81.

The court will also allow $152.80 in Ms. Goltz' out-of-pocket costs.

Turning to the title company's claimed fee structure, the court finds it to also be unreasonably high. It is filled with arbitrary and artificially-created "fees" which bear no reasonable relation to the work involved for the service. For example, the following fees are puffed up beyond any recognition of what it is (or should be) actually charged for such "services," as many of those charges are reasonably included in

---

[4] When the fee is adjusted, the court used the "blended rate" of $174.11.

the $600 "Trustee Fee" itself. Therefore, the court finds the following "Trustee Fees" to be unreasonable and not compensable:

| Item | Amount | Comments |
|---|---:|---|
| Copies | 75.00 | No explanation of how many nor at what cost per unit |
| Doc Prep Fee | 50.00 | Included in the $600 Trustee Fee |
| Postponement Fee | 650.00 | Too high, arbitrary, and included in $600 Trustee Fee |
| Reconveyance Fee | 75.00 | Included in $600 Trustee Fee |
| Reinstatement/Payoff Fee | 50.00 | Included in $600 Trustee Fee |
| Service Fee | 449.40 | No explanation |
| Statement Fee | 240.00 | No explanation |
| TSG Fee | 250.00 | No explanation |
| **TOTAL** | **$1,839.40** | |

The cost for the title company's efforts will not be compensated beyond the reasonable sum of $1,129.35.

## RULING

Therefore, the amount claimed by Ms. Goltz, for § 506 expenses, shall be awarded to her in the reasonable amounts of:

| | |
|---|---:|
| Attorneys' Fees | $ 2,081.81 |
| Costs | 152.80 |
| Trustee Expenses | 1,129.35 |
| TOTAL | $ 3,363.96 |

A separate order must be entered that resolves this final issue. Counsel for the Debtors shall lodge one within ten (10) days.

DATED AND SIGNED ABOVE.

| | |
|---|---|
| 1 | COPIES served on the date signed above upon: |
| 2 | Nancy J. March<br>DeConcini McDonald Yetwin & Lacy, P.C. |
| 3 | 2525 E. Broadway Blvd., #200<br>Tucson, AZ 85716-5300     Email nmarch@dmyl.com |
| 4 | |
| 5 | Wayne Mortensen<br>Farnsworth Law Offices, Inc. |
| 6 | 1837 S Mesa Dr #A103<br>Mesa, AZ 85210     Email: azflo@cox.net |
| 7 | Dianne C. Kerns, Trustee<br>7320 N. La Cholla #154 |
| 8 | PMB 413<br>Tucson, AZ 85741-2305     Email mail@dcktrustee.com |
| 9 | |
| 10 | Craig Morris<br>Craig Morris, PC<br>1790 East River Road Suite 245 |
| 11 | Tucson, AZ 85718     Email: craigmorrispc@qwest.net |
| 12 | Office of the United States Trustee<br>230 North First Avenue, Suite 204 |
| 13 | Phoenix, AZ 85003-1706     U.S Mail |
| 14 | |
| 15 | By /s/   M. B. Thompson<br>     Judicial Assistant |

SIGNED